## BROWNELL, ATTORNEY GENERAL, SUCCESSOR TO THE ALIEN PROPERTY CUSTODIAN, *v.* CHASE NATIONAL BANK OF NEW YORK, TRUSTEE, ET AL.

No. 24.   Argued October 16–17, 1956.—Decided November 19, 1956.

*George B. Searls* argued the cause for petitioner. With him on a brief were *Solicitor General Rankin, Assistant Attorney General Townsend* and *James D. Hill.   Simon E. Sobeloff,* then Solicitor General, was also on a brief with *Mr. Townsend, Mr. Hill* and *Mr. Searls.*

*Thomas A. Ryan* argued the cause and filed a brief for the Chase National Bank of New York, Trustee, respondent.

*Samuel Anatole Lourie* argued the cause and filed a brief for Schaefer et al., respondents.

*Arthur J. O'Leary* argued the cause for Schwarzburger et al., respondents.   With him on the brief was *Kenneth J. Mullane.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

The question in the case is whether petitioner, by virtue of a vesting order issued under § 5 of the Trading with the Enemy Act, as amended, 40 Stat. 411, 50 U. S. C. App. § 5, is entitled to the *res* of a trust established in 1928 by one Cobb and administered by respondent under an indenture. The trust was created for the benefit of the descendants of Bruno Reinicke who, by reason of his powers over the trust and his ownership of the right of reversion, was the real settlor.

In 1945, when this Nation was at war with Germany, the Alien Property Custodian issued an order vesting "all right, title, interest and claim of any kind or character whatsoever" of the beneficiaries of the trust, declaring that they were nationals of Germany. Subsequently the Custodian (for whom the Attorney General was later substituted) intervened in an action brought by the trustee in the New York courts for a construction of the indenture and for an accounting. Relief sought by that intervention was that the income of the trust be paid to the Attorney General and that the powers reserved to the settlor be held to have passed by virtue of the vesting order to the Attorney General. We are also advised by the report of the case in the Court of Appeals that the Attorney General also claimed that, if the vesting order had not transferred the settlor's powers to the Attorney General, "then the trust had failed and all of the trust property should pass to the Attorney General under the vesting order as being property of alien enemies." *Chase National Bank* v. *McGrath*, 301 N. Y. 602, 603–604, 93 N. E. 2d 495.

The New York Supreme Court denied the relief asked by the Attorney General, holding he was not entitled to the income of the trust, that he had not succeeded to the powers of the settlor, and that those powers were vested

in the trustee as long as the settlor was barred from asserting them. On appeal the Appellate Division affirmed. *Chase National Bank* v. *McGrath,* 276 App. Div. 831, 93 N. Y. S. 2d 724. The Court of Appeals in turn affirmed. *Chase National Bank* v. *McGrath,* 301 N. Y. 602, 93 N. E. 2d 495. No review of that order was sought here.

Some years passed, when, in 1953, the Attorney General amended the vesting order by undertaking to appropriate "all property in the possession, custody or control" of the trustee.* In a suit in the New York courts he asked, among other things, that the principal of the trust be transferred to him. The Supreme Court of New York denied the relief. The Appellate Division affirmed without opinion. *Chase National Bank* v. *Reinicke,* 286 App. Div. 808, 143 N. Y. S. 2d 623. The Court of Appeals denied leave to appeal. *Chase National Bank* v. *Reinicke,* 309 N. Y. 1030, 129 N. E. 2d 790. The case is here on certiorari. 350 U. S. 964.

We do not reach the several questions presented under the Trading with the Enemy Act for we are of the view that the principles of *res judicata* require an affirmance. In the first litigation, the Attorney General sought to reach the equitable interests in the trust and the powers of the settlor. When the Attorney General now seeks the entire bundle of rights, he is claiming for the most part what was denied him in the first suit. That is not all. In the first suit he claimed that if he were denied the

---

*The state of war between this country and Germany was declared ended by the Joint Resolution of October 19, 1951, 65 Stat. 451. That Resolution contained, however, a proviso that all property, which, prior to January 1, 1947, was subject to seizure under the Act, continued to be subject to the Act. The 1953 vesting order preceded by a few days the termination of the vesting program of German-owned properties announced by the President on April 17, 1953.

powers which the settlor had over the trust, the trust must fail and all the trust property must be transferred to him. In other words, the Attorney General tendered in the first suit his claim to the entire property. Cf. *Young* v. *Higbee Co.,* 324 U. S. 204, 208–209. Under familiar principles of *res judicata,* the claim so tendered may not be relitigated. *Cromwell* v. *County of Sac,* 94 U. S. 351, 352; *Tait* v. *Western Maryland R. Co.,* 289 U. S. 620, 623. If he was not content with the first ruling, his remedy was by certiorari to this Court. *Angel* v. *Bullington,* 330 U. S. 183, 189. Having failed to seek and obtain that review, he is barred from relitigating the issues tendered in the first suit.

*Affirmed.*

MR. JUSTICE CLARK and MR. JUSTICE HARLAN took no part in the consideration or decision of the case.